STATE OF NORTH CAROLINA v. RICKY DALE BROCK

No. 47A81

(Filed 4 May 1982)

### 1. Criminal Law § 165— necessity for objection to prosecutor's jury argument

While the appellate court will review alleged improprieties in the prosecutor's jury argument in a capital case despite defendant's failure timely to object, the general rule that objection to the prosecutor's jury argument must be made prior to the verdict for the alleged impropriety to be reversible on appeal applies in a first degree murder case in which defendant received a sentence of life imprisonment.

### 2. Criminal Law §§ 48, 102.10— defendant's post-arrest silence—purpose for which admissible

In a first degree murder case in which defendant testified that he denied his guilt when confronted by his girlfriend at the time of his arrest and the State presented rebuttal evidence that defendant made no such denial but remained silent, the rebuttal evidence was properly admissible only for purposes of challenging defendant's earlier exculpatory statement, and although the prosecutor could not argue defendant's silence as substantive evidence of defendant's guilt, he was entitled to comment on this contradictory evidence in his final argument as a ground for disbelief of defendant's story.

### 3. Criminal Law §§ 48, 102.6— argument about defendant's post-arrest silence—waiver of objection—absence of prejudice

Defendant waived objection to two comments by the prosecutor in his jury argument concerning defendant's post-arrest silence by failing to object thereto at the trial. Another comment by the prosecutor about defendant's failure to deny his guilt when confronted by his girlfriend at the time of his arrest, to which defendant did object, was not so prejudicial as to deny defendant a fair trial. In any event, any prejudice to defendant by the prosecutor's comments about his post-arrest silence was negated by the court's instruction to the jury that defendant had a right to be and remain silent and that defendant's silence was not to be considered in any manner to be an admission of his guilt or as evidence of his guilt.

### 4. Homicide § 25— first degree murder—instructions on proximate cause of death

The trial court's instructions that in order for the jury to find defendant guilty of first degree murder on the basis of premeditation and deliberation the State must prove first "that the defendant intentionally and with malice hit *or* shot [deceased] with a deadly weapon" and second "that the hitting *and* shooting was a proximate cause of [deceased's] death" did not permit the jury to convict defendant of first degree murder without finding that his act or acts inflicted the fatal wounds. Rather, a reading of the entire charge to the jury shows that the jury could not have returned a verdict of guilty of first degree murder based on premeditation and deliberation without an express finding that defendant's act or acts were a proximate cause of deceased's death.

State v. Brock

**5. Criminal Law § 7.5— doctrine of duress—instruction not required**

   The common law doctrine of duress does not recognize any duress, even the threat of imminent death, as sufficient to excuse the intentional killing of an innocent human being and does not apply if defendant had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm. Therefore, defendant was not entitled to an instruction on duress in a prosecution for first degree murder where all the evidence tended to show that defendant was either the actual killer of the victim or that he assisted another in killing the victim and where the evidence also showed that defendant had a reasonable opportunity to run away from the building in which the killing occurred and avoid any further aid to the other person involved in the killing without undue exposure to death or serious bodily harm when he left the building to talk with the driver of a vehicle which had driven up outside the building.

**6. Homicide § 24.1— presumptions of malice and unlawfulness—instructions not improper**

   The trial court's instructions in a first degree murder case did not create impermissible presumptions of malice and unlawfulness in light of the total absence of any evidence to rebut the existence of malice and unlawfulness.

APPEAL by defendant from judgment entered by *DeRamus, Judge,* at the 2 February 1981 Criminal Session of STANLY Superior Court.

Defendant was tried on bills of indictment charging him with (1) armed robbery and (2) murder. Bobby Clyde Gardner was the alleged victim of both offenses.[1]

Evidence presented by the state, including key testimony by Melvin Tracy Caudle, is summarized in pertinent part as follows:

Defendant asked Caudle to help him sell some counterfeit money to Gardner. On the evening of 12 November 1980 defendant, Caudle and Gardner went to defendant's garage. After arriving there, defendant began shooting Gardner and then beat him on his head with a hammer. Thereafter, defendant removed a Derringer and a roll of money from Gardner's pockets and shot him again. Gardner continued to live and defendant hit him several more times with the hammer. At this point, a vehicle drove up outside of the garage and defendant went out to speak to the driver, McMahon.

When defendant reentered the garage, he wrapped the victim's legs with tire chains and put the body in the back of a sta-

---

1. The jury returned a verdict of not guilty on the armed robbery charge.

tion wagon. Defendant told Caudle to clean up the garage while he disposed of the body. When defendant returned, he gave Caudle the weapons used in the murder and instructed Caudle to get rid of them. Caudle cooperated only because he was afraid defendant would kill him.

Caudle left the garage, went to his girlfriend's home, and told her what had happened. He then went to work and told his supervisor what had happened. Upon the advice of the supervisor, Caudle went to the sheriff and told his story. He showed the police where he had hidden the weapons. Gardner's body was found in a creek not far from the garage.

Evidence presented by defendant is summarized in pertinent part as follows:

When defendant arrived at the garage on the evening in question, he found Gardner lying on the floor with Caudle standing over him. Caudle shot at defendant, forced him to assist with loading the body and threatened to kill him if he told anyone. Caudle had told several people prior to the shooting that something big was going to happen in Norwood and that they would read about it. McMahon, the person who drove up and talked with defendant during the killing, testified that he noticed no blood on defendant, this testimony conflicting with Caudle's statement that defendant had blood all over him. Defendant attempted to offer into evidence the testimony of I. B. Nichols, a licensed polygraphist, who stated on voir dire that he had tested defendant and the results indicated that defendant was being completely truthful when he stated that he did not shoot Gardner but that Caudle did. The trial judge ruled this evidence inadmissible.

Other evidence pertinent to the questions raised on appeal will be alluded to in the opinion.

With respect to the murder charge, the court submitted the case to the jury on first-degree murder, second-degree murder, or not guilty. The jury returned a verdict finding defendant guilty of first-degree murder based on malice, premeditation and deliberation.[2]

2. The state's brief indicates that a hearing to determine punishment was conducted pursuant to G.S. 15A-2000 *et seq.* and that the jury recommended a sentence of life imprisonment.

From judgment imposing a life sentence, defendant appealed.

*Attorney General Rufus L. Edmisten by Assistant Attorney General J. Michael Carpenter and Assoicate Attorney Daniel C. Higgins for the State.*

*Malcolm R. Hunter, Jr., Assistant Appellate Defender, for defendant.*

BRITT, Justice.

All of defendant's assignments of error relate to the prosecutor's jury argument and the trial court's jury instructions. We find no merit in any of the assignments and leave undisturbed the judgment of the trial court.

Defendant contends first that the prosecutor violated his rights guaranteed by Article I, Section 23, of the state constitution, and the fifth and fourteenth amendments to the federal constitution "by arguing to the jury that evidence of defendant's post-arrest silence was evidence of his guilt of the crimes charged."

Defendant testified that while he was present at the murder scene, he was not the perpetrator and participated only because of coercion. On direct examination, he made no reference to any statement made at the time of his arrest. On cross examination defendant testified that on the date of the offense he was living with his girlfriend; that when the officers came to his apartment and informed him of the murder charges against him, his girlfriend hugged his neck and said, "You didn't do this, did you?"; that he replied "No."; and that he believed Officers Lowder, Almond and Covington were present at the time he made the answer to his girlfriend.

Also on cross examination defendant testified that at the time the officers came to his home and served the murder warrant on him, he told Sheriff McSwain that he did not commit the murder; and that he further told Mr. McSwain after he was brought to the courthouse that he did not do it.

On rebuttal, Deputy Sheriff Lowder was called as a witness by the state. He testified that he was one of the officers that went to the defendant's home for the purpose of serving the

murder warrant on him; that he read the allegations in the warrant to defendant; that defendant's girlfriend was present at the time; that immediately thereafter she said, "Ricky, tell me you didn't do it."; that she made this statement two or three times; and that defendant made no response to her.

At defendant's request, the trial court agreed to instruct the jury that defendant's post-arrest silence could not be considered as evidence of his guilt; and that the evidence of defendant's silence would be admitted only to contradict and impeach the testimony of defendant that he did not remain silent when arrested. The court instructed the prosecutor that he was not to argue to the jury or imply that defendant's silence was an admission of guilt, but that he could argue the discrepancy in defendant's testimony and Mr. Lowder's testimony for impeachment purposes.

Under this assignment of error, defendant complains about the following portions of the prosecutor's argument to the jury:

> You can't believe what this defendant said. He has changed his story several times—*didn't tell or wouldn't tell the story to start with*. (Emphasis added.) Rp 146.
>
> \* \* \*
>
> First of all, let's go back before that, and look how the defendant reacted when he was arrested. This is for you to consider. He said that he responded to his girlfriend and said, no, he didn't do it. What did Roger Lowder say—he said he was right there—false testimony. Roger Lowder has no interest in the outcome of this case. Trying to get the truth. His own girlfriend—his own girlfriend—tell me you didn't do it—tell me you didn't do it. Has she testified? Think about it—think about it. Dwight Farmer—many days later—many days later. Then by this time he had his story, he thought, put together. . . . Rp. 180. And would you expect him to tell one bit of the truth—a man who acts like this—*a man who never told a story until many days or weeks later.* R pp 183-184.

It is well-settled in this jurisdiction that control of the arguments of counsel rests primarily in the discretion of the presiding judge. *State v. King,* 299 N.C. 707, 264 S.E. 2d 40 (1980).

*State v. Thompson*, 293 N.C. 713, 239 S.E. 2d 465 (1977). Ordinarily, objection to the prosecuting attorney's jury argument must be made prior to the verdict for the alleged impropriety to be reversible on appeal. *State v. Smith*, 294 N.C. 365, 241 S.E. 2d 674 (1978); *State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503 (1970). Failure to object waives the alleged error. *Id.*

[1] An exception to this rule is found in capital cases where, because of the severity of the death sentence, this court will review alleged improprieties in the prosecutor's jury argument despite defendant's failure to timely object. *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979). However, even in death cases the impropriety must be extreme for this court to find that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel failed to find prejudicial when he heard it. *Id.* In the case at bar, since defendant received a sentence of life imprisonment the general rule and not the exception applies.

[2] The record reveals that defendant had no objection to these remarks of the prosecutor when they were made at trial. He has thus waived any impropriety and will not be allowed to raise these objections for the first time on appeal.

One comment by the district attorney, of the same nature as the above arguments, did drawn an objection from defendant.

> The defendant gets arrested—doesn't deny to his girlfriend that he's guilty—does not deny it. He even knows she was trying to persuade him to say it isn't so—that's strong language, folks—strong evidence— '. . . . R p 184.

Following this objection the court asked counsel to approach the bench. While the court did not rule on the objection, the prosecutor in resuming his summation changed his line of argument. Defense counsel did not request a curative instruction.

[2, 3] This court has consistently held that the prosecutor may argue to the jury the relevant law, facts in evidence and all reasonable inferences to be drawn therefrom. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975). Defendant testified that he denied his guilt when confronted by his girlfriend at the time of his arrest. In

rebuttal, the state presented evidence that defendant made no such denial but in fact remained silent. The rebuttal evidence was properly admissible, but only for purposes of challenging defendant's earlier exculpatory statement. *See Doyle v. Ohio,* 426 U.S. 610 (1976). Although he could not argue defendant's silence as substantive evidence of defendant's guilt, the prosecutor was entitled to comment on this contradictory evidence in his final argument as grounds for disbelief of defendant's story. Reviewing the prosecutor's comment in context, we find that the argument was not so prejudicial as to deny defendant a fair trial. The prosecutor's argument was cut short by defendant's objection before it reached the level of reversible error. Failure of defense counsel to seek curative instructions indicates that he was satisfied that no prejudice had accrued at that point.

Finally, with regard to all the above portions of the prosecutor's closing argument now objected to by defendant, we note that any prejudice to defendant was negated by the court's thorough instructions to the jury that defendant had a right to be and remain silent and that defendant's silence was not to be considered in any manner to be an admission of his guilt or as evidence of his guilt.

The assignment of error is overruled.

In his second assignment of error, defendant takes exception to numerous other comments made by the prosecutor during his final argument. We find it unnecessary to set forth these remarks now excepted to on appeal as none were objected to at trial. Defendant has waived those alleged errors. Further, it is well-established that counsel is allowed wide latitude in arguing hotly contested cases. *State v. Johnson, supra; State v. Covington, supra.* The prosecuting attorney has the duty to use every legitimate means to bring about a just conviction and to make an earnest and vigorous presentation of the state's case. *State v. King, supra; State v. Monk, supra.* We perceive no abuse of discretion by the court in its control of counsel's closing arguments.

[4] Defendant's next assignment of error concerns the court's instructions on the elements of first-degree murder. He contends that the court committed reversible error by failing to explicitly

instruct the jury that they must find defendant's acts caused the victim's death in order to convict him of first-degree murder.

The portions of the charge excepted to required that in order for the jury to find defendant guilty of first-degree murder on the basis of malice, premeditation and deliberation, the state must prove first "that the defendant intentionally and with malice hit *or* shot Bobby Clyde Gardner, Sr. with a deadly weapon" and second "that the hitting *and* shooting was a proximate cause of Gardner's death." (Emphasis added.)

Defendant's contention is based on conclusions he submits the jury could have drawn from the evidence presented. The state's evidence, through the testimony of Caudle, established defendant as the sole perpetrator of the murder. Defendant, on the other hand, testified that at gunpoint he assisted Caudle in disposing of the body and cleaning up the gore in the garage. He further testified that he never hit or shot Gardner. Defendant asserts that from this evidence the jury might have found that defendant participated in the crime to a greater degree than he admitted to and, that he, in fact, inflicted one or more of the wounds on Gardner. Should the jury have so found, he argues, then under the instruction referred to above the jury could have convicted him of first-degree murder without finding that his act or acts inflicted the fatal wounds. Defendant's argument is without merit.

A person is criminally responsible for a homicide only if his act caused or directly contributed to the death of the victim. *State v. Atkinson,* 298 N.C. 673, 259 S.E. 2d 858 (1979); *State v. Luther,* 285 N.C. 570, 206 S.E. 2d 238 (1974). The state must establish that the accused's act was a proximate cause of the death in order to obtain a conviction for murder. *State v. Minton,* 234 N.C. 716, 68 S.E. 2d 844 (1952).

A reading of the entire charge to the jury shows that the jury could not have returned a verdict of guilty of first-degree murder based on premeditation and deliberation without an express finding that defendant's act or acts were a proximate cause of Gardner's death.

Specifically, Judge DeRamus instructed

So I charge that if you find from the evidence beyond a reasonable doubt that on or about November 12, 1980, Ricky

Dale Brock intentionally shot Bobby Clyde Gardner, Sr., with a .44 caliber revolver, a .22 caliber Derringer, or a .20 guage shotgun, or hit Gardner with a hammer or metal tool, and that such hammer or such metal tool was a deadly weapon, and that this or any combination of such shooting and hitting proximately caused Gardner's death, and that Ricky Dale Brock intended to kill Garnder and that he acted with malice after premeditation and with deliberation, it would be your duty to return a verdict of guilty of first degree murder. R p 197.

We hold that this instruction was a correct and proper statement of the law on proximate cause. Clearly under the instructions given, the jury was required to find that defendant inflicted an injury or injuries on the victim and that such injury or injuries proximately resulted in death.

[5] By his fourth assignment of error, defendant contends that the court committed reversible error by failing to instruct the jury on the defense of duress.

It is the duty of the court to instruct the jury on all the substantive features of a case raised by the evidence, *State v. Ferrell*, 300 N.C. 157, 265 S.E. 2d 210 (1980); *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974); and all defenses arising from the evidence constitute substantive features of a case. *State v. Jones*, 300 N.C. 363, 266 S.E. 2d 586 (1980); *State v. Faust*, 254 N.C. 101, 118 S.E. 2d 769 (1961).

North Carolina recognizes the common law doctrine of duress as a defense to certain prosecutions. *See State v. Sherian*, 234 N.C. 30, 65 S.E. 2d 331 (1951); *State v. Kearns*, 27 N.C. App. 354, 219 S.E. 2d 228 (1975). In *Sherian*, defendants insisted that they had no part in committing the felonious assault; however, they admitted that they aided a person who committed the assault in their presence to escape and avoid arrest and punishment. They contended that they acted under compulsion and through fear of death or great bodily harm at the hands of the person who committed the assault. In view of that evidence, this court held that the trial court erred in not giving the jury specific instructions on the defense of duress or compulsion.

The common law rule does not, however, recognize any duress, even the threat of imminent death, as sufficient to excuse

the intentional killing of an innocent human being. Perkins, *Criminal Law*, p. 951 (2d ed. 1969). This principle was explicitly followed by this court in *State v. Powell*, 106 N.C. 722, 11 S.E. 525 (1890). In that case this court stated

> "And, therefore, though a man may be violently assaulted, and hath no other possible means of escaping death but by killing an innocent person, this fear and force shall not acquit him of murder, for he ought rather to die himself than escape by the murder of an innocent."

106 N.C. at 726.

In *State v. Kearns, supra*, the Court of Appeals said:

> It is the general rule that in order to constitute a defense to a criminal charge *other than taking the life of an innocent person*, the coercion or duress must be present, imminent or impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done. Furthermore, the doctrine of coercion cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm. Annot. 40 A.L.R. 2d 908 (1955). (Emphasis added.)

27 N.C. App. at 357.

In no view of the evidence in the case at hand was defendant entitled to an instruction on duress. If defendant was the actual killer of Garnder, as the jury found, clearly the doctrine does not apply. If defendant assisted Caudle in killing Gardner[3], clearly the doctrine does not apply. And, if defendant had a "reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm", he was not entitled to invoke the doctrine. Defendant testified:

> We heard Larry McMahon pulling around to the front of the building and heard him stop. Mr. Caudle said to go see what he wanted. Then Tracy started toward the door there

---

3. Defendant testified that when McMahon drove up outside the garage, Gardner was still alive, "moving and hollering or talking"; that "Tracy grabbed a piece of plastic and he had one leg and I had the other and we pulled Mr. Gardner behind the wash pit there."

and he stopped right about the side door there. He said for me to go see what Larry wanted. He told me if I said anything to Larry about what had happened that he would kill me and whoever was out there. I then walked to the door and *went outside.* I saw Larry's wife and his little girl, Tonya, with Larry. I told Larry that I thought Gene was with him. Larry asked me if I wanted Gene. I told him that I did not I just thought that Gene was with him. Then Larry asked me something about what I was doing out there and then he said that he would see me later. *I walked back in the door to the garage.*

Larry pulled on up a little bit further and stopped. Tracy told me that he had stopped again. That's when I went out the first bay door to my right and talked to Larry. He was still in his truck, and I went out there and he asked me if I needed any help. Larry was about ten or fifteen feet from the door at that time. The door was still open and cracked. I told Larry I believed that I did not need any help and that someone was there. I walked back in the door and went back over to the wash pit area. (Emphasis added.)

Thus it appears that defendant had a reasonable opportunity to run away from the building and avoid any further aid to Caudle without "undue exposure to death or serious bodily harm."

[6] By his last assignment of error, defendant contends that the court's instructions on malice and unlawfulness were improper because they created a mandatory conclusive presumption as to those elements and thus denied defendant his constitutional right to trial by jury.

The instruction objected to by defendant reads:

If the State proves beyond a reasonable doubt that the defendant intentionally killed Bobby Clyde Gardner, Sr., with a deadly weapon or intentionally inflicted a wound upon Gardner with a deadly weapon that proximately caused his death, the law implies first, that the killing was unlwful; and second, that it was done with malice.

Defendant argues that the instruction was erroneous because at no point in the charge was the jury told that the presumptions

of malice and unlawfulness could be rebutted. Defendant's argument has no merit in view of the contentions and evidence in this case.

The legal presumption set forth in the above instruction has been approved by this court on many occasions. *See State v. Simpson,* 303 N.C. 439, 279 S.E. 2d 542 (1981); *State v. Patterson,* 297 N.C. 247, 254 S.E. 2d 604 (1979); *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds,* 432 U.S. 233 (1977).

Speaking for the court in *Hankerson, supra,* Justice Exum stated

> The *Mullaney* ruling does not, however, preclude all use of our traditional presumptions of malice and unlawfulness. It precludes only utilizing them in such a way as to relieve the state of the burden of proof on these elements when the issue of their existence is raised by the evidence. The presumptions themselves, standing alone, are valid and, we believe constitutional. (Citations.) Neither, by reason of *Mullaney,* is it unconstitutional to make the presumptions mandatory in the absence of contrary evidence. . . .

288 N.C. at 649.

Our review of the record shows that use of the presumption in the instant case in no way relieved the state of its burden of proving beyond a reasonable doubt the existence of every element of first-degree murder. The record is void of any lawful excuse for the killing of Gardner.[4] Defendant's testimony that Caudle alone committed all the acts in perpetration of the murder did not raise any issue of self-defense or heat of passion upon sudden provocation. Likewise, we rejected defendant's claim of a right to the defense of duress in the previous assignment of error.

---

4. Defendant's reliance on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed. 2d 39 (1979), is completely misplaced. In that case defendant admitted killing the victim but contended that he did not do so purposely or knowingly and was, therefore, not guilty of deliberate homicide but of a lesser crime. In view of defendant's contention, and evidence presented in support thereof, the U.S. Supreme Court held that a jury instruction to the effect that the "law presumes that a person intends the ordinary consequences of his voluntary acts" violates the fourteenth amendment due process requirement that the state prove every element of a criminal offense beyond a reasonable doubt.

"The state is not required to prove malice and unlawfulness unless there is some evidence of their non-existence . . . ." *State v. Simpson, supra,* at 451; *State v. Hankerson, supra,* at 650. Further, "In the absence of *any* rebutting evidence, however, no issue is raised as to the non-existence of the elemental facts and the jury may be directed to find the elemental facts if it finds the basic facts to exist beyond a reasonable doubt." *State v. White,* 300 N.C. 494, 507, 268 S.E. 2d 481 (1980).

Considering the total absence of any evidence to rebut the existence of malice and unlawfulness, we hold that the instruction given did not create an impermissible presumption.

We conclude that defendant received a fair trial, free from prejudicial error.

No error.