STATE OF NORTH CAROLINA v. WILLIAM D. LITTLE, EZEKIAL HALL, MELVIN SURGEON

No. 8310SC409

(Filed 6 March 1984)

**Convicts and Prisoners § 2; Criminal Law § 7.5; Kidnapping § 1.1— kidnapping of prison employees by prisoners—evidence of duress properly excluded**

In a prosecution for kidnapping in which three prison inmates held as many as six prison employees and two other inmates as hostages at Central Prison for approximately 42 hours, the trial court properly found that duress, coercion, compulsion or necessity, based on general prison conditions, could not be raised as a defense in the case since defendants failed to show that (a) they were faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (b) there was no time for complaint to the authorities, or that such a complaint would have been futile; and (c) there was no opportunity to resort to courts to redress their grievances.

APPEAL by defendants from *Braswell, Judge.* Judgments entered 19 October 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 30 November 1983.

*Attorney General Edmisten, by Special Deputy Attorney General Myron C. Banks, for the State.*

*Thomas C. Manning, Robert E. Zaytoun, Appellate Defender Adam Stein, and Assistant Appellate Defender Marc D. Towler, for defendant appellants.*

BECTON, Judge.

Shortly before 10:30 a.m. on Tuesday, 23 March 1982, the defendants, William D. Little, Ezekial Hall, and Melvin Surgeon, all inmates at Central Prison, seized control of the diagnostic center at Central Prison. With homemade daggers and other weapons, these defendants, for approximately 42 hours thereafter, held as many as six prison employees and two other inmates as hostages. Although neither seeking to escape nor asking to be set free, the defendants demanded that SKY 5, the Channel 5 news helicopter, be brought to Central Prison so that they could air their complaints, and that they be transferred to a federal correctional facility outside North Carolina.

State v. Little

Negotiations with the inmates for the release of the hostages began immediately. At various times during the ordeal, the inmates talked to Dr. Walter Venners, a clinical psychologist at Central Prison, Deputy Warden (now Warden) Nathan Rice, F.B.I. Agent Brooks Madden, Walter Johnson of the Parole Commission, Bart Rittner of WPTF Radio, and attorney Irving Joyner. On the second day of the incident, the defendants agreed to exchange four of the hostages for sandwiches, water and cigarettes. Later that day, one of the remaining hostages, Stallings, suffered a dizzy spell from high blood pressure and slumped over. Attorney Joyner and F.B.I. Agent Madden urged defendants to release Stallings to show they were negotiating in good faith. Defendants complied. During the early morning hours of Thursday, 25 March 1982, an agreement was reached by which the defendants would voluntarily surrender to the F.B.I.; Madden would personally guarantee the defendants' safety; and the defendants would be transferred from Central Prison to a federal institution outside North Carolina. In return, defendants were to surrender their weapons and release the remaining hostages. This was done at approximately 3:00 a.m. on Thursday, 25 March 1982.

On 15 October 1982, a Wake County jury found each defendant guilty of six counts of second degree kidnapping. Defendant Little received six consecutive twenty-five year prison sentences; defendant Hall received six consecutive thirty-year prison sentences; and defendant Surgeon received six consecutive fifteen-year prison sentences. Each defendant appeals.

I

All of defendants' substantive assignments of error relate to the trial court's finding that duress, coercion, compulsion or necessity, based on general prison conditions, could not be raised as a defense in this case. Defendants argue that the trial court's ruling, whether made as a matter of law or on the facts of this particular case, was erroneously relied upon in several instances. We disagree.

Defendants set forth their contentions as follows:

Relying at least in part on that ruling, [the trial judge] quashed defendants' subpoena seeking records of the Department of Corrections relating to the defense and prohibited

the defendants from asking questions of proposed jurors regarding the defense. Based entirely on that ruling of law, [the trial judge] barred any cross examination of State witnesses concerning the defense . . . and [excluded] even an offer of proof as to what that testimony would have been.

Coercion or duress is recognized as a defense in this State to criminal charges other than the taking of the life of an innocent person. *State v. Brock,* 305 N.C. 532, 290 S.E. 2d 566 (1982); *State v. Kearns,* 27 N.C. App. 354, 219 S.E. 2d 228 (1975), *disc. review denied,* 289 N.C. 300, 222 S.E. 2d 700 (1976). Indeed, our Supreme Court recently held that "duress, *if proven,* would be a complete defense to the kidnapping charge" when the defendant's evidence, if believed, would have shown that his participation in a kidnapping was because another defendant required him to do so at the point of a gun. *State v. Strickland,* 307 N.C. 274, 300, 298 S.E. 2d 645, 661 (1983) (emphasis added). *Strickland* is obviously distinguishable from the case at bar. Strickland testified that he was forced to kidnap someone at gunpoint; Strickland was not in prison.

As pointed out by the United States Supreme Court, one principle remains constant in cases involving the defense of duress:

[I]f there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail. [Citation omitted.] Clearly, in the context of prison escape, the escapee is not entitled to claim a defense of duress or necessity unless and until he demonstrates that, given the imminence of the threat, violation of [18 U.S.C. § 751(a), which governs escape from federal custody] was his only reasonable alternative.

*United States v. Bailey,* 444 U.S. 394, 410-11, 62 L.Ed. 2d 575, 591, 100 S.Ct. 624, 635 (1980).

This Court, following the lead of the United States Supreme Court and several state supreme courts, has held that prison conditions can raise the defense of duress or coercion to escape charges. *State v. Watts,* 60 N.C. App. 191, 298 S.E. 2d 436 (1982). *See United States v. Bailey; State v. Horn,* 58 Hawaii 252, 566 P.

2d 1378 (1977); *State v. Baker*, 598 S.W. 2d 540 (Mo. App. 1980); *People v. Trujillo*, 41 Colo. App. 223, 586 P. 2d 235 (1978); *People v. Pelate*, 49 Ill. App. 3d 11, 363 N.E. 2d 860 (1977); *People v. Lovercamp*, 43 Cal. App. 3d 823, 118 Cal. Rptr. 110 (1974); *People v. Unger*, 66 Ill. 2d 333, 362 N.E. 2d 319 (1977).

In *Watts*, the defendant presented evidence that he was forced to flee the prison unit because he had been beaten and threatened with death by a correctional officer and his complaint to the prison superintendent had been ignored. Although the *Watts* Court, based on the ruling in *United States v. Bailey*, held that the trial court had properly refused to charge on the defense of duress, because the defendant had failed to show that he had immediately reported to the proper authorities upon attaining a position of safety from the immediate threat, we left little doubt that the trial court would have been required to instruct on duress, had the defendant shown a justification for his continued absence.

So we state the general rule in this State: "[I]n order to constitute a defense to a criminal charge other than taking the life of an innocent person, the coercion or duress must be *present, imminent* or *impending*, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done." *State v. Kearns*, 27 N.C. App. at 357, 219 S.E. 2d at 230-31 (emphasis added); *see also State v. Brock*.

In the case before us, there is not a scintilla of evidence that any of the three defendants was subject to any duress or coercion which was either "present, imminent or impending," and certainly no evidence to suggest that any of them expected death or injury if they failed to kidnap prison officials. And at no time did defendants even suggest that they were prepared to make such a showing. The "defendants' subpoena seeking records of the Department of Corrections relating to the defense" required the production of all records concerning weapons found and/or confiscated, incident reports concerning assaults on inmates by other inmates, and records containing complaints by inmates of emotional or mental problems related to abuse or injury suffered by those inmates as a result of the actions of other inmates. Yet, at the hearing on the State's motion to quash defendants' subpoena, the defendants presented no evidence to establish their personal

connection with the incidents in the subpoenaed records. None of the defendants testified at the hearing. And the prison officials called by the defendants to testify about the records they maintained were not asked if the defendants themselves had made any complaints.

It is true that *Watts*, and several of the other cited cases, involved the defense of duress or coercion in escape cases as opposed to kidnapping cases. *Watts* is nevertheless instructive, however, because the prison conditions in *Watts* — assaults and threats upon the life of Watts — directly and personally affected Watts himself. We, therefore, in support of our analysis, find the following requisites from *Watts*, that must be met in order for an inmate to raise the defense of duress or coercion, helpful:

(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any relief from such complaints illusory;

(3) There is no time or opportunity to resort to courts;

(4) There is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

60 N.C. App. at 193, 298 S.E. 2d at 437 (quoting *People v. Lovercamp*, 43 Cal. App. 3d 823, 831-32, 118 Cal. Rptr. 110, 115 (1974)).

It is true that defendants' acts of kidnapping and holding hostage prison officials do not fit neatly into the scheme of things envisioned by *Watts*. For example, the fourth and fifth conditions set forth in *Watts* are clearly inapplicable to the facts of this case. We need not decide if judicial surgery or alchemy is necessary to transform conditions four and five into useful requisites when inmates kidnap and hold prison officials hostage because the defendants, in this case, did not even satisfy the first three condi-

tions of *Watts*. The defense of duress or coercion is not available to the defendants because they failed to show that (a) they were faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (b) there was no time for complaint to the authorities, or that such a complaint would have been futile; and (c) there was no opportunity to resort to courts to redress their grievances.

We hold further that the trial court did not err in quashing defendants' subpoena, in prohibiting the defendants from asking questions of proposed jurors regarding the defenses, and in barring any cross examination of State's witnesses concerning the defenses. Simply put, the trial court did not rule as a matter of law that coercion or duress may never be a defense in a kidnapping case. When defendants sought a subpoena requiring production of information about the existence of weapons in certain cell blocks, prisoners' assaults on other prisoners, and emotional and psychiatric complaints of prisoners, all with the apparent aim of showing "deplorable conditions" at Central Prison as justification for the three defendants taking prison employees hostage, the trial court held that "there is no law to allow the defense of duress or coercion *in this case on this charge* of kidnapping in violation of G.S. 14-39. The general prison conditions at Central Prison, the general atmosphere at Central Prison, is not a defense in this case." The trial court made similar statements (a) when it refused to allow defense counsel to question prospective jurors about the defense of duress or coercion and (b) when it sustained the State's objection to defense counsel's question to a hostage about whether defendants, as a reason for wanting to leave Central Prison, mentioned the deplorable conditions there. The trial court correctly held on the facts of this case that the general prison conditions at Central Prison provided defendants with no defense to the charge of kidnapping and holding hostage prison officials and inmates.

## II

We have upheld the trial court's decision to grant the State's motion quashing defendants' subpoena to produce documents because defendants failed to meet their threshold burden of demonstrating that, given the imminence of the threat, kidnapping was their only reasonable alternative. We, therefore, need not decide

(1) if the subpoena was vague and overly broad; (2) if the subpoena would place an unreasonable burden on the Department of Correction; and (3) if the production of the material would violate the privacy of the inmates to whom the records pertained. We merely point out that when a defendant has met the threshold requirements, a subpoena of records showing the availability of knives to inmates in defendants' section of prison and the pervasiveness of fear of physical harm on the part of inmates in that section of the prison, may be relevant. *See State v. Spaulding*, 298 N.C. 149, 257 S.E. 2d 391 (1979).

In this trial, we find

No error.

Chief Judge VAUGHN and Judge HILL concur.