STATE OF NORTH CAROLINA v. MICHAEL RAY QUESINBERRY

No. 407A85

(Filed 7 April 1987)

1. **Homicide § 21.5— first degree murder—evidence of intent to kill, premeditation, and proximate cause of death—sufficient**

There was sufficient evidence in a first degree murder prosecution to prove a specific intent to kill, premeditation and deliberation, and that defendant proximately caused the victim's death where defendant's statement indicated that he had been reflecting on his inability to provide for his family when he was inspired to pick up a hammer from the floor of his truck, enter the store, pick up a soft drink and ask the victim for cigarettes, and hit the victim over the head while his back was turned; a co-worker described defendant's absence of agitation when he returned to work following the murder; defendant deliberately disposed of the bloody hammer and the money; defendant confessed that he inflicted a second blow to the victim's head after the victim had been knocked to the floor; the pathologist described the injuries as ten distinct lacerations caused by more than one blow of a blunt object; and, while an emergency room physician initially determined that the cause of death was myocardial infarction, he stressed that this was a first impression and the pathologist testified that, even if the victim had had a heart attack at the last minute, the head injuries and ensuing trauma caused the attack.

2. **Criminal Law § 113.1; Homicide § 25— first degree murder—recapitulation of State's evidence—no prejudicial error**

The trial court did not commit prejudicial error in a prosecution for first degree murder by instructing the jury that the evidence for the State tended to show that the victim was struck ten times and sustained ten injuries to the head where a pathologist had testified that the victim's head had ten lacerations which were so separate that one blow could not have caused them all. The court's statement was factually accurate if arguably misleading, the court accurately recapitulated defendant's statement that he had hit the victim only twice, the jury was permitted to review defendant's statement during its deliberations, and defendant failed to object at trial.

3. **Jury § 7.11— first degree murder—challenges for cause—beliefs regarding death penalty—no abuse of discretion**

The trial court did not abuse its discretion in a first degree murder prosecution by seating a juror who expressed his belief that every murderer should receive the death sentence but assured the trial court that he could and would follow the court's instructions and remain open-minded regarding the appropriate sentence, or by excusing for cause a juror who expressed uncertainty about whether he could impose the death penalty.

4. **Criminal Law § 102.6— argument to jury—misstatement of evidence—no prejudice**

The trial judge in a prosecution for first degree murder was not required to act *ex mero motu* when the prosecutor argued that defendant "in his own

words" thought of killing the shopkeeper before he entered the store, but defendant had not testified and his statement contained no admission that he had in mind killing the shopkeeper before he entered the store. The jury had heard the statement read to it during the presentation of the State's case, it had heard more than once that it was to take its own recollection of the evidence, it had the text of defendant's statement in the jury room throughout its deliberations, and defendant failed to object when the prosecutor made the remarks.

5. **Criminal Law § 135.8— felony murder and premeditated murder—aggravating circumstances of robbery and pecuniary gain—error to submit both**

The trial court in a first degree murder prosecution arising from a robbery erred by submitting both the aggravating factor that the murder was committed while defendant was engaged in the commission of a robbery and the factor that the murder was committed for pecuniary gain where the jury had found defendant guilty based on both felony-murder and premeditation and deliberation. The robbery was the underlying felony for the felony-murder theory and, under the merger rule, could not be submitted as an aggravating circumstance for felony-murder; the submission of both factors on premeditated and deliberate murder was redundant because the facts of the case revealed that defendant murdered the shopkeeper for the single purpose of committing an armed robbery; the same evidence underlies proof of both factors; and the submission of both factors cannot be held harmless because the jury arrived at a sentence of death based upon two aggravating factors against several mitigating factors and it is impossible to determine the weight ascribed to each factor.

Justice MARTIN dissenting in part.

Justices MEYER and MITCHELL join in the dissenting opinion.

APPEAL of right pursuant to N.C.G.S. 7A-27(a) from a judgment imposing the sentence of death entered by *Helms, J.*, at the 12 June 1985 Criminal Session of Superior Court, RANDOLPH County. Heard in the Supreme Court 10 March 1987.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Gordon Widenhouse for defendant-appellant.*

WHICHARD, Justice.

Evidence presented, in the light most favorable to the State, tended to show the following:

Van Buren Luther, age 71, was discovered lying on the floor of Luther's Grocery Store at 1:37 p.m. on 20 July 1984. The rescue squad arrived within minutes, by which time Mr. Luther was

walking carefully out of the door of the store, holding his head. He was covered with blood, but was no longer bleeding. An ambulance arrived at 2:09 p.m. and took him, intermittently unconscious and restless, to the hospital, where he died at 5:53 p.m.

Defendant was taken into custody and advised of his rights at around 4:30 p.m. the same day. At 7:00 p.m. defendant made a statement to an SBI agent confessing that he had inflicted blows to the victim's head with a hammer.

The jury found defendant guilty of robbery with a dangerous weapon and murder in the first degree on the bases of both felony murder and malice, premeditation, and deliberation. *See* N.C.G.S. 14-17 (1986). The jury found that mitigating circumstances were insufficient to outweigh aggravating circumstances and recommended a sentence of death.

## GUILT PHASE

[1] Defendant raises six issues concerning the guilt-innocence phase of the trial. In three of these defendant contends that the trial court erred in failing to dismiss the charge of first degree murder because the evidence was insufficient to prove (1) a specific intent to kill, (2) premeditation and deliberation, and (3) that defendant proximately caused the victim's death. This Court has observed that while specific intent to kill is an essential element of first degree murder, it is also a necessary constituent of the elements of premeditation and deliberation. *State v. Propst*, 274 N.C. 62, 71, 161 S.E. 2d 560, 567 (1968). "Thus, proof of premeditation and deliberation is also proof of intent to kill." *State v. Jones*, 303 N.C. 500, 505, 279 S.E. 2d 835, 839 (1981). We therefore treat these contentions together.

Premeditation has been defined as "thought beforehand for some length of time, however short." *State v. Welch*, 316 N.C. 578, 589, 342 S.E. 2d 789, 796 (1986) (quoting *State v. Corn*, 303 N.C. 293, 297, 278 S.E. 2d 221, 223 (1981) ). A killing is committed with deliberation if it is done in a " 'cool state of blood,' without legal provocation, and . . . to accomplish some unlawful purpose. (Citation omitted.) The intent to kill must arise from 'a fixed determination previously formed after weighing the matter.' " *Id.* at 589-590, 342 S.E. 2d at 796 (quoting *State v. Corn*, 303 N.C. 293, 297, 278 S.E. 2d 221, 223).

Because premeditation and deliberation relate to mental processes, they are rarely susceptible to proof by direct evidence. *State v. Gladden*, 315 N.C. 398, 430, 340 S.E. 2d 673, 693, *cert. denied*, --- U.S. ---, 93 L.Ed. 2d 166 (1986). This Court has identified a number of circumstances that may be considered in determining whether a killing was with premeditation and deliberation. Among these are (1) a lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing, (3) the dealing of lethal blows after the deceased has been felled and rendered helpless, (4) evidence that the killing was done in a brutal manner, and (5) the nature and number of the victim's wounds. *E.g., State v. Gladden*, 315 N.C. at 430-31, 340 S.E. 2d at 693.

In this case there was both direct and circumstantial evidence before the trial court from which the jury could find the presence of premeditation and deliberation. Direct evidence consisted of defendant's statement, which indicated that defendant had left work around 1:00 p.m., had gone to his truck and smoked marijuana, then had driven to Luther's Grocery on his way home. Defendant said that he stopped to get a drink, but noticed there was no one else around.

> While sitting in the truck, I started thinking about how broke I was and the baby needing diapers and other things. I saw a hammer laying in the floorboard of the truck. I reached down and put the hammer in my back pocket. I went into the store and got me a Pepsi Cola and told the man I wanted a pack of cigarettes. The old man who was running the store turned to get the cigarettes. When the old man turned to get the cigarettes, I took the hammer from my pocket and hit him in the back of the head. The man fell on the floor. I hit the man one more time in the head. I got the money out from under a box in the back of the cash register. The money was in a zip-up purse. I took the money and the hammer and ran out to the truck and got in it.

Defendant's statement concluded by describing how he had thrown the hammer out of the truck window, hidden the money under a rock in a field, and returned to work some time after 2:00 p.m.

The statement alone reveals defendant's emotional state just prior to the attack. He had been reflecting on his inability to provide for his family when he was inspired to pick up a hammer lying on the floor of the truck. He pocketed it, entered the store, fetched a soft drink, then approached the victim, asked for cigarettes, and hit the victim over the head while his back was turned. The jury could reasonably have concluded that these actions resulted from deliberation—that they were not impulsive but governed by cool, reasoned thought.

Jason Coggins, defendant's co-worker, testified that defendant had left work around 1:30 p.m. because he said he had something he needed to do. When defendant returned approximately a half an hour later, Coggins noticed nothing unusual about defendant's conduct or demeanor. Coggins' testimony describing defendant's absence of agitation, along with defendant's deliberate disposal of the bloodied hammer and the money, similarly support the jury's finding of the deliberation element of murder in the first degree.

In addition, defendant's statement reveals the unprovoked and brutal nature of the assault upon the shopkeeper. Defendant confessed that he inflicted a second blow to the victim's head after the victim had already been knocked to the floor. If, as defendant contends, the first blow was the result of a premeditated and deliberate decision only to rob but not to kill, then the second blow provided sufficient evidence for the jury to find these essential elements for first degree murder. The brutality of the attack was also apparent from the testimony of the forensic pathologist who conducted an autopsy on the victim. He described the injuries to the victim's head as ten distinct lacerations, "the majority" of which reached to the skull. In his opinion these wounds had been caused by more than one blow of a blunt object.

For his contention that the evidence was insufficient to prove that his hammer blows proximately caused the victim's death, defendant relies upon the testimony of a hospital physician who arrived in the emergency room five to ten minutes before the official time of the victim's death and while cardio-pulmonary resuscitation was in progress. The physician initially determined that the probable cause of the victim's death was myocardial infarction. However, in his testimony the physician stressed that this

conclusion was a first impression and that it was not borne out by the autopsy.

The forensic pathologist who performed the autopsy testified that the victim had had severe heart disease, including severe occlusion of two of his three main coronary arteries. He noted an area of fibrosis, indicating that the victim had suffered a heart attack in the past, but he testified unequivocally that in his opinion the victim's death had been caused by blunt-force injuries to the head. If the victim had had a heart attack "at the last minute," the pathologist testified, the injuries to the head and the ensuing trauma had caused that attack.

A person is criminally responsible for a homicide if his act caused or directly contributed to the death of the victim. *State v. Brock*, 305 N.C. 532, 539, 290 S.E. 2d 566, 571 (1982); *State v. Atkinson*, 298 N.C. 673, 682, 259 S.E. 2d 858, 864 (1979), *overruled in part on other grounds*, *State v. Jackson*, 302 N.C. 101, 273 S.E. 2d 666 (1981). The testimony of the pathologist was definitive on the issue of proximate cause. The cause of death tentatively cited by the emergency room physician was, according to the physician's own testimony, not medically conclusive. Even if the jury had perceived that testimony as contradicting the findings of the forensic pathologist, such contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *State v. Brown*, 315 N.C. 40, 58, 337 S.E. 2d 808, 822 (1985), *cert. denied*, --- U.S. ---, 90 L.Ed. 2d 733 (1986); *State v. Powell*, 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980).

In considering a motion to dismiss, the trial court must view all of the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that may be drawn therefrom supporting the charges against the defendant. *State v. Penley*, 318 N.C. 30, 48, 347 S.E. 2d 783, 793 (1986). "The trial court must determine as a matter of law whether the State has offered 'substantial evidence of all elements of the offense charged so any rational trier of fact *could find* beyond a reasonable doubt that the defendant committed the offense.'" *Id.*, 347 S.E. 2d at 794 (quoting *State v. Riddick*, 315 N.C. 749, 759, 340 S.E. 2d 55, 61 (1986)). If the trial court determines that "there is substantial evidence (a) of each essential element of the offense charged, . . . and (b) of defendant's being the perpetrator of the

offense," then the motion to dismiss is properly denied. *Id.*, 347 S.E. 2d at 793.

We conclude that there was substantial evidence before the jury that the victim's death was the proximate result of hammer blows to his head inflicted by defendant after premeditation and deliberation and with the specific intent to kill. The trial court thus did not err in denying defendant's motion to dismiss the charge of first degree murder on that basis.

[2] Defendant next contends that the trial court committed plain error by including the following statement in its instructions to the jury: "Now, the evidence for the State does tend to show that . . . Mr. Luther was struck a total of some ten times and sustained ten injuries to his head." Defendant notes that the only source of evidence at trial concerning how many times the victim was struck with the hammer was defendant's statement, which specifically described only two blows. Although the pathologist testified that in his opinion the victim's injuries were so separate that one blow could not have caused them all, he offered no opinion as to how many blows had caused the ten wounds, nor what object(s) had dealt the blows.

Strictly speaking, the trial court's statement was factually accurate, if arguably misleading. The pathologist's testimony that the victim's head had ten lacerations did not necessarily imply that defendant had struck all ten blows. It was possible, for instance, that the victim cut his head on the counter or floor when he first fell. Similarly, the trial court's instruction that the victim had been "struck" ten times did not necessarily imply that defendant's hammer had done the striking. Even if this was the jury's understanding, any inaccuracy was cured by prior and subsequent instructions and rulings. First, the trial court told the jury more than once to use its own recollection of the evidence rather than the court's summary. Second, the court accurately recapitulated defendant's statement that he had hit the victim only twice. Third, the jury was permitted to review defendant's statement during its deliberations. When, as here, the defendant fails to object to the alleged error at trial, the appellate court must be convinced that had the error been absent, the jury probably would have reached a different verdict. *State v. Stanton*, 319 N.C. 180, 188-89, 353 S.E. 2d 385, 390-91 (1987). *See State v. Black*,

308 N.C. 736, 740-41, 303 S.E. 2d 804, 806-07 (1983). We are convinced that the trial court's misstatement, if indeed it was one, was of no substantial consequence. *See State v. Jones,* 303 N.C. at 506-07, 279 S.E. 2d at 839.

[3] Defendant also assigns error to the trial court's treatment of challenges for cause of two potential jurors. One of these expressed his belief that every murderer should receive the death sentence; but upon assuring the trial court that he could and would follow the court's instructions and remain open-minded regarding the appropriate sentence, he was seated as a juror. The other potential juror expressed his uncertainty about whether he could impose the death penalty, even if he were instructed to do so by the court.

We note preliminarily that defendant exercised only six of the fourteen peremptory challenges permitted him under N.C.G.S. 15A-1217(a)(1). Because he did not exhaust his peremptory challenges as provided by N.C.G.S. 15A-1214(h), no prejudice has been shown as to the juror who remained on the panel. *State v. Avery,* 315 N.C. 1, 21, 337 S.E. 2d 786, 797 (1985).

The constitutional standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt,* 469 U.S. 412, 424, 83 L.Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas,* 448 U.S. 38, 45, 65 L.Ed. 2d 581, 589 (1980)). Both potential jurors were asked if they could put aside their prejudices concerning the death penalty and respond to the court's instructions. One juror said he could; the other responded equivocally. Under the *Adams-Witt* standard, the first was properly not excused for cause; the second was properly so excused. The trial court has "broad discretion 'to see that a competent, fair and impartial jury is empaneled.'" *State v. Avery,* 315 N.C. 1, 21, 337 S.E. 2d 786, 797 (quoting *State v. Johnson,* 298 N.C. 355, 362, 259 S.E. 2d 752, 757 (1979)). We find no abuse of that discretion here.

[4] In defendant's final assignment of error concerning the guilt phase of his trial, he complains that the prosecutor's closing argu-

ment was based upon facts not in evidence. The prosecutor argued in part:

> That at the store [defendant] thought of killing Mr. Luther, thought of robbing him there. I would argue that that was premeditation. . . . That the Defendant acted after premeditation, that he formed the intent to kill. Once again, in his own words, he thought of killing him before he went into the store.

"[I]n his own words" could refer only to defendant's statement, defendant avers, since he did not testify at the guilt phase of his trial. The statement contains no admission that he had killing the shopkeeper in mind before he entered the store.

Even if the jury had understood this portion of the prosecutor's argument to be a statement of fact and not argument, defendant was not prejudiced thereby. The jury had heard the statement read to it during presentation of the State's case, it heard—more than once—the trial court's charge that it was to take its own recollection of the evidence, and it had the text of defendant's statement in the jury room throughout its deliberations. We note defendant's failure to object when the prosecutor made these remarks, and hold that "in the absence of [that] objection, the statement did not amount to such gross impropriety as to require the trial judge to act *ex mero motu*, or to recall that the statement had been made and caution the jury to disregard it." *State v. Oliver*, 309 N.C. 326, 359, 307 S.E. 2d 304, 325-26 (1983).

### SENTENCING PHASE

[5] The only aggravating circumstances submitted to and found by the jury in the sentencing phase of the trial were that the murder was committed while defendant was engaged in the commission of a robbery, N.C.G.S. 15A-2000(e)(5), and that the murder was committed for pecuniary gain, N.C.G.S. 15A-2000(e)(6). Defendant contends that submitting both factors violates due process and renders the capital sentence arbitrary and capricious. Under the particular facts of this case, we find defendant's contention that it was error to submit both factors meritorious.

The jury found defendant guilty of murder in the first degree based specifically upon both felony murder and premeditation and

deliberation. The basis for the conviction dictates differences in sentencing. Most notable among these is the application of the merger rule to a felony murder: when a murder is committed in the course of a felony and the perpetrator is convicted of murder in the first degree solely on that basis, "the underlying felony becomes a part of the murder charge to the extent of preventing a further prosecution of the defendant for, or a further sentence of the defendant for, commission of the underlying felony." *State v. Cherry*, 298 N.C. 86, 113, 257 S.E. 2d 551, 567 (1979), *cert. denied*, 446 U.S. 941, 64 L.Ed. 2d 796 (1980); *State v. Silhan*, 302 N.C. 223, 262, 275 S.E. 2d 450, 477 (1981). It follows logically that the underlying felony should not be submitted as an aggravating circumstance at the sentencing phase of the trial. In *State v. Cherry*, this Court observed that a defendant convicted of a felony murder "will have one aggravating circumstance 'pending' " simply by virtue of the nature of the underlying felony. *Cherry*, 298 N.C. at 112, 275 S.E. 2d at 568. Because this "flaw in the statute" would result in the greater possibility that a felony-murder defendant would be sentenced to death than one convicted on the basis of premeditation and deliberation, we held that aggravating circumstances "concerning the underlying felony" could not be submitted as aggravating factors in sentencing. *Id.* at 113, 275 S.E. 2d at 568.

In *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981), the *Cherry* holding was refined for cases in which the aggravating circumstance "for pecuniary gain" was submitted to a jury sentencing a defendant convicted of a robbery-felony-murder. The Court asserted constitutional grounds for its refinement of *Cherry*, holding that the fifth amendment's protection against double jeopardy is not violated because the "pecuniary gain" aggravating factor was not an element of the underlying offense. "This circumstance examines the *motive* of the defendant rather than his *acts*. While his motive does not constitute an element of the offense, it is appropriate for it to be considered on the question of his sentence." *Id.* at 62, 274 S.E. 2d at 204 (emphases added).

The rationale articulated in *Oliver* for submitting the "pecuniary gain" aggravating factor for purposes of sentencing robber-murders has been consistently upheld in the context of a defendant's conviction of felony murder. *E.g., State v. Jackson*,

309 N.C. 26, 44, 305 S.E. 2d 703, 716 (1983); *State v. Taylor*, 304 N.C. 249, 288-89, 283 S.E. 2d 761, 785 (1981), *cert. denied*, 463 U.S. 1213, 77 L.Ed. 2d 1398, *reh'g denied*, 463 U.S. 1249, 77 L.Ed. 2d 1456 (1983); *State v. Irwin*, 304 N.C. 93, 107, 282 S.E. 2d 439, 448 (1981). *See also State v. Williams*, 317 N.C. 474, 483-86, 346 S.E. 2d 405, 411-13 (1986) (in sentencing defendant convicted under robbery-felony-murder theory, use of pecuniary gain aggravating factor does not violate eighth amendment's proscription against cruel and unusual punishment); *State v. Oliver*, 309 N.C. at 351, 307 S.E. 2d at 321 (pecuniary gain factor not unconstitutionally vague). This authority clearly governs defendant's contention here insofar as it rests upon the felony murder basis for his conviction. The aggravating factor that the murder was committed in the course of a robbery drops out under the authority of *Cherry* and the pecuniary gain aggravating factor remains under the authority of *Oliver I* and its progeny.

To this point our case law has addressed the theoretical incompatibility of these two factors only in the context of felony murders. In that context, *Cherry* has permitted only the pecuniary gain factor actually to be submitted to the jury. Thus, if defendant's conviction had been based solely on felony murder, it would have been error to submit the aggravating circumstance that the murder was committed while defendant was engaged in the commission of a robbery. *Cherry*, 298 N.C. 86, 257 S.E. 2d 551.

The new question now before us — one of first impression in our jurisdiction — is whether these two factors, when submitted together for purposes of sentencing a defendant convicted of first degree murder on the basis of premeditation and deliberation, are redundant. We conclude that one plainly comprises the other. Although the pecuniary gain factor addresses motive specifically, the other cannot be perceived as conduct alone, for under the facts of this case the motive of pecuniary gain provided the impetus for the robbery itself. Admittedly, situations are conceivable in which an armed robber murders motivated by some impulse other than pecuniary gain, *e.g.*, where the robbery is committed to obtain something of purely reputational or sentimental, rather than pecuniary, value. The facts of this case, though, reveal that defendant murdered the shopkeeper for the single purpose of pecuniary gain by means of committing an armed robbery.

Not only is it illogical to divorce the motive from the act under the facts of this case, but the same evidence underlies proof of both factors. In *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979), this Court held it improper to submit two aggravating factors supported by the same evidence when a defendant has been convicted of murder in the first degree on the basis of both felony murder and premeditation and deliberation. In *Goodman*, the aggravating circumstance that the "capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws," N.C.G.S. 15A-2000(e)(7), was supported by the same facts as those supporting the aggravating circumstances that the "capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody." N.C.G.S. 15A-2000(e)(4). The Court wrote: "We think the submission of the two issues on the same evidence was improper. This amounted to an unnecessary duplication of the circumstances enumerated in the statute, resulting in an automatic cumulation of aggravating circumstances against the defendant." *Goodman*, 298 N.C. at 29, 257 S.E. 2d at 587.

*Goodman* is sound general authority that in the context of a robbery-murder it is neither appropriate nor equitable to submit a statutorily-enumerated aggravating factor that overlaps with another. It is apparent that, in the particular context of a premeditated and deliberate robbery-murder where evidence is presented that the robbery was attempted or effectuated for pecuniary gain, the submission of both the aggravating factors enumerated at N.C.G.S. 15A-2000(e)(5) and (6) is redundant and that one should be regarded as surplusage. We therefore hold that it was error to submit both of these aggravating factors to the jury.

Under the statutory sentencing scheme of Florida, the Supreme Court of that state came to the same conclusion:

> [H]ere, as in all robbery-murders, both subsections refer to the *same aspect* of the defendant's crime. Consequently, one who commits a capital crime in the course of a robbery will always begin with two aggravating circumstances against him while those who commit such a crime in the course of any other enumerated felony will not be similarly disadvantaged. . . . [W]e believe that [defendant's] pecuniary motive

at the time of the murder constitutes only one factor which we must consider in this case.

*Provence v. State,* 337 So. 2d 783, 786 (Fla. 1976), *cert. denied,* 431 U.S. 969, 53 L.Ed. 2d 1065 (1977). *See also Cook v. State,* 369 So. 2d 1251, 1256 (Ala. 1978) ("[W]e do not think it appropriate to apply this aggravating circumstance [pecuniary gain] to situations already condemned under subsection 4 [committed in the course of a robbery] which by definition involve an attempt at pecuniary gain. Thus, to avoid repetition, subsection 6 [pecuniary gain] should not be applied to a robbery.").[1]

When there is "a *reasonable possibility* that the erroneous submission of an aggravating circumstance tipped the scales in favor of the jury finding that the aggravating circumstances were 'sufficiently substantial' to justify imposition of the death penalty," the test for prejudicial error has been met. *State v. Irwin,* 304 N.C. at 107, 282 S.E. 2d at 449. Because the jury arrived at a sentence of death based upon weighing only two aggravating factors against several mitigating factors and because it is impossible now to determine the amount of weight ascribed to each factor, we cannot hold the error of submitting both redundant aggravating factors harmless. Defendant is accordingly entitled to a new sentencing hearing pursuant to N.C.G.S. 15A-2000(d)(3).

The need to address defendant's remaining assignments of error concerning the sentencing phase of his trial is obviated by our order for a new hearing on sentencing.

---

1. In 1981 the Alabama legislature amended the sentencing statute of that state to specifically provide for "double-counting": "The fact that a particular capital offense . . . necessarily includes one or more aggravating circumstances . . . shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence." Ala. Code Sec. 13A-5-50 (1982 & Supp. 1986).

We note that in this jurisdiction the General Assembly has prohibited such redundancy under the Fair Sentencing Act: "Evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation, and the same item of evidence may not be used to prove more than one factor in aggravation." N.C.G.S. 15A-1340.4(a)(1)(p) (1983). Statutory provisions governing capital punishment, N.C.G.S. 15A-2000, antedate those governing other felonies and have not been amended either to similarly prohibit or to condone the "double-counting" of aggravating factors. The "double-counting" is prohibited, however, by this Court's decision in *Goodman,* when the submission of the two issues depends on the same evidence. *Goodman,* 298 N.C. at 29, 257 S.E. 2d at 587.

Guilt phase: no error.

Sentencing phase: new hearing.

Justice MARTIN dissenting in part.

I dissent from the holding of the majority awarding the defendant a new sentencing hearing. Otherwise, I concur in the majority opinion.

The majority finds that the trial court erred in submitting as aggravating circumstances that the murder occurred while defendant was committing a robbery and that the murder was committed for pecuniary gain. Believing as I do that there is no legislative impediment to submitting both aggravating circumstances in this case, I disagree.

The majority candidly concedes that N.C.G.S. § 15A-2000, our capital sentencing act, does not prohibit the use of both circumstances in a sentencing hearing based upon premeditated and deliberate murder. Nevertheless, the majority proceeds to bar the use of both of these circumstances in such sentencing hearings. In doing so, the majority misperceives the nature of and reason for the aggravating circumstance that the murder was committed in the commission of a robbery. It is the intent of the legislature that jurors should be allowed to consider whether premeditated and deliberate murders committed in the commission of a robbery should be punished more severely than other premeditated and deliberate murders. That the defendant is seeking pecuniary gain is not the only fact that makes robbery an aggravating circumstance. Robbery involves an assault, a taking of the property of another by violence or by putting the victim in fear. *State v. Moore*, 279 N.C. 455, 183 S.E. 2d 546 (1971). Armed robbery additionally involves the use of a deadly weapon endangering the life of the victim. So the crime of robbery involves more than seeking pecuniary gain; it is assaultive conduct that may, and often does, endanger the lives of persons other than the murder victim. It is extremely relevant to the purposes of sentencing. It is the *actions* of defendant that are being considered by the jury with respect to this aggravating circumstance.

In contrast, when the jury considers the aggravating circumstance of "pecuniary gain," it is evaluating the *motive* or

reason why the murder was committed. *State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983). Rather than being concerned with the actions of the defendant, here the jury is considering the *mental* state of defendant. The legislature has said that a jury should be allowed to consider for the purposes of sentencing the circumstance that the defendant committed the murder for the purpose of pecuniary gain.

The two aggravating circumstances are not subsumed one into the other. By way of illustration, the aggravating circumstance of the murder being committed in the commission of a felony, N.C.G.S. § 15A-2000(e)(5), includes flight from an attempt to commit robbery. In such case the motive would be escape rather than pecuniary gain.

This Court has already held in a strong line of cases that it is proper to submit the "pecuniary gain" aggravating circumstance in cases of murder in the first degree based on felony murder with robbery as the underlying felony. *Oliver*, 309 N.C. 326, 307 S.E. 2d 304; *State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703 (1983); *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981), *cert. denied*, 463 U.S. 1213, 77 L.Ed. 2d 1398, *reh'g denied*, 463 U.S. 1249, 77 L.Ed. 2d 1456 (1983); *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981); *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied*, 446 U.S. 941, 64 L.Ed. 2d 796 (1980). This does not violate the eighth amendment to the United States Constitution. *State v. Williams*, 317 N.C. 474, 346 S.E. 2d 405 (1986).[1]

Here Quesinberry was not sentenced for felony murder but for murder based upon premeditation and deliberation. Of course, robbery is not an essential element of premeditated and deliberate murder. The contentions of the defendant are even weaker where, as here, the robbery is not essential to the state's case. The General Assembly has mandated that where there is evidence to support the aggravating circumstances, as here, the jury should be allowed to consider both the actions of the defendant (actus reus) (the killing occurred during the commission of a robbery) and the mental state or motive of the defendant (mens rea)

---

1. In *State v. Young*, 312 N.C. 669, 325 S.E. 2d 181 (1985), this Court upheld a sentencing hearing where both aggravating circumstances at issue here were submitted to the jury, although the Court's opinion does not address the issue.

(the killing was for the purpose of pecuniary gain). Because one aggravating circumstance focuses on conduct and the other on mental state, the two are by no means redundant and it was not error to submit both in this case. This Court should find no error in the sentencing phase and thereupon determine the issue of proportionality.

I am authorized to state that Justices MEYER and MITCHELL join in this dissenting opinion.