**Charles Edward BIRR, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 86–325.**

Supreme Court of Wyoming.

Nov. 4, 1987.

Public Defender Program, Leonard D. Munker, State Public Defender, and Martin J. McClain, Deputy State Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., and John W. Renneisen, Sr. Asst. Atty. Gen., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellant Charles Edward Birr pleaded guilty to one count of accessory to felony murder, in violation of §§ 6-1-201[1] and 6-2-101, W.S.1977,[2] and one count of accessory to aggravated robbery, in violation of §§ 6-1-201[3] and 6-2-401(c)(ii), W.S.1977.[4] He was sentenced to the Wyoming State Penitentiary for life on the murder charge and for 20 to 25 years on the aggravated robbery charge. These terms were to run consecutively. Appellant appeals this sentence.

We affirm.

Appellant presents the following issue for our review:

"Whether the Judge's decision to sentence Appellant to consecutive sentences for felony murder and the underlying felony violated the double jeopardy clauses of the United States and Wyoming Constitutions."

Appellant, being short on money, got together with two friends, Fred Schultz and Frank Garcia, to plan a robbery. The intended victims, Robert Louis Bernard and Kathleen Ann Bernard, had been involved with appellant in drug transactions, and appellant was aware that they would be collecting money within the next few days. Since Schultz and Garcia were unknown to the Bernards, it was decided that they would commit the actual robbery.

On March 1, 1985, appellant supplied Schultz and Garcia with guns, rope, and duct tape and drove them to the Bernards' trailer, where he dropped them off. The plan was for Schultz and Garcia to threaten the Bernards and "rough them up" to get them to disclose where the money was hidden. Then Schultz and Garcia were to tie up the Bernards with the rope, gag them with the duct tape, take the money and the Bernards' car, and rejoin appellant. Ap-

---

1. Section 6-1-201, W.S.1977, provides as follows:

    "(a) A person who knowingly aids or abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed, is an accessory before the fact.

    "(b) An accessory before the fact:

    "(i) May be indicted, informed against, tried and convicted as if he were a principal;

    "(ii) May be indicted, informed against, tried and convicted either before or after and whether or not the principal offender is indicted, informed against, tried or convicted; and

    "(iii) Upon conviction, is subject to the same punishment and penalties as are prescribed by law for the punishment of the principal."

2. Section 6-2-101, W.S.1977, provides as follows:

    "(a) Whoever purposely and with premeditated malice, or in the perpetration of, or at-

tempt to perpetrate, any sexual assault, arson, robbery, burglary, escape, resisting arrest or kidnapping, or by administering poison or causing the same to be done, kills any human being is guilty of murder in the first degree.

    "(b) A person convicted of murder in the first degree shall be punished by death or life imprisonment according to law."

3. See note 1, supra.

4. Section 6-2-401(c)(ii), W.S.1977, provides as follows:

    "(c) Aggravated robbery is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years if in the course of committing the crime of robbery the person:

    *   *   *   *   *   *

    "(ii) Uses or exhibits a deadly weapon or a simulated deadly weapon."

proximately 20 minutes after dropping Schultz and Garcia off, appellant rendezvoused with them as planned. Schultz and Garcia left the Bernards' car and went with appellant.

Appellant claims he was not aware that the men had a knife until after he picked them up and he noticed Schultz wiping blood off himself. It was at that time that he was told the Bernards were dead. The men drove for a few miles and then stopped to get rid of the knife and bloody shirt. They split the money, about a thousand dollars, and used the cocaine taken during the robbery.

On August 27, 1986, pursuant to a plea agreement, appellant pleaded guilty to the charges contained in the amended information.[5] The court accepted the plea agreement and appellant's pleas of guilty. On October 28, 1986, prior to sentencing, appellant filed a motion to merge the offenses for purposes of the sentencing. The motion was denied at the sentencing hearing held November 4, 1986. Appellant was sentenced to consecutive terms of incarceration in the Wyoming State Penitentiary.

"While the respective double jeopardy provisions of the Wyoming State Constitution [Art. 1, § 11] and the Fifth Amendment to the Federal Constitution are dissimilar in language, they have the same meaning and are coextensive in application." *Vigil v. State*, Wyo., 563 P.2d 1344, 1350 (1977).

The double jeopardy clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The double jeopardy clause provides three protections. First, it prohibits a second prosecution for the same offense after an acquittal. Second, it prohibits a second prosecution for the same offense after conviction. Third, it prohibits multiple punishments for the same offense. *Tuggle v. State*, Wyo., 733 P.2d 610 (1987); *Garrett v. United States*,

471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764, reh. denied 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). It is this third protection with which we are concerned in the present case.

"Where consecutive sentences are imposed at a single criminal trial, the role of the [double jeopardy clause] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

Further,

"the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where [the legislature] intended * * * to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981).

In *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the defendant was convicted of rape and of murder in the commission of a rape. In determining legislative intent, the United States Supreme Court looked to the legislative history and applied the Blockburger test[6] discussed infra. In addition, the United States Supreme Court noted that the offenses were contained in separate statutes, that the punishment for each offense was provided for separately, and that a separate statute existed dealing specifically with whether sentences may run consecutively.

In *Tuggle v. State*, we similarly determined legislative intent in regard to multiple punishments. In that case, the defendant was sentenced consecutively for two assaults which took place at the same time

---

**5.** The plea agreement provided that appellant would plead guilty to one count of felony murder and to one count of aggravated robbery. As reflected in the amended information, appellant ultimately pleaded guilty to accessory to felony murder and accessory to aggravated robbery.

**6.** See *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

and place but which were committed against different persons. We found that separate acts had occurred and that independent facts were needed to prove each act. We distinguished the Blockburger test which applies when a defendant commits *one* act which violates *two* different and separate statutes or provisions. We quoted *Vigil v. State*, 563 P.2d at 1351, which stated that " ' "any human being" is in the singular and there is no indication that the defendant can get a bargain rate if he assaults a group of human beings.' " 733 P.2d at 612. We found that the obvious intent of the legislature was to protect each individual.

As indicated in *Tuggle v. State*, the Blockburger test is the most commonly used test for determining when multiple punishments violate the double jeopardy clause. "[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. at 304, 52 S.Ct. at 182. Considerable confusion has arisen over the application of the Blockburger test. Some courts have applied the test as a constitutional requirement, e.g., *State v. Haggard*, Mo.banc, 619 S.W.2d 44 (1981), vacated 459 U.S. 1192, 103 S.Ct. 1171, 75 L.Ed.2d 423

(1983), while others have used it as a rule of statutory construction, e.g., *Hunter v. State*, Del.Supr., 430 A.2d 476, cert. denied 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 390 (1981). The United States Supreme Court, the author of the test, has clearly stated that it is merely a tool for determining legislative intent. *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United States*, 450 U.S. at 340, 101 S.Ct. at 1142. We agree that the Blockburger test should be applied, but its result should be given meaning only as an indication of legislative intent and not as a rule of law which conclusively determines whether a punishment is inclusive or cumulative.

The Blockburger test can be applied by looking at the provisions of the statutes themselves and determining whether each statute calls for proof of a fact which the other does not. It also can be applied by looking at the facts of the particular case and determining if there is a different fact available to prove each of the separate offenses. Whether one of these approaches is more determinative of legislative intent is not completely clear.[7] In this case, the trial court applied the Blockburger test to the provisions of the statutes and to the particular facts. The trial court determined that, in order to prove felony

---

**7.** Justice Rehnquist's dissent in *Whalen v. United States* addresses the problem of applying the Blockburger test to a statute which can be violated in multiple ways:

> "This multiplicity of predicates creates problems when one attempts to apply *Blockburger.* If one applies the test in the abstract by looking solely to the wording of [the compound statute] and the statutes defining the various predicate felonies, *Blockburger* would always permit imposition of cumulative sentences, since no particular felony is ever 'necessarily included' within a violation of [the compound statute]. If, on the other hand, one looks to the facts alleged in a particular indictment brought under [the compound statute], then *Blockburger* would bar cumulative punishments for violating [the compound statute] and the particular predicate offense charged in the indictment, since proof of the former would necessarily entail proof of the latter." Id., 445 U.S. at 709, 100 S.Ct. at 1447 (emphasis omitted).

Justice Rehnquist concludes that the Blockburger test, when applied to compound and predicate statutes, "has nothing whatsoever to do with legislative intent, turning instead on arbitrary assumptions and syntactical subtleties." Id. at 712, 100 S.Ct. at 1448. The majority opinion in *Whalen v. United States* does not provide a solution to this problem either. It states:

> "Contrary to the view of the dissenting opinion, we do not in this case apply the Blockburger rule to the facts alleged in a particular indictment. We have simply concluded that, for purposes of imposing cumulative sentences under [the statute], Congress intended rape to be considered a lesser offense included within the offense of a killing in the course of rape." Id., 445 U.S. at 694, 100 S.Ct. at 1439 n. 8 (citation omitted).

It would seem that, as a tool to determine legislative intent, the Blockburger test should be applied to the particular statutes involved and not to the particular facts. Presumably, the legislature was aware of the contents of the statutes when it drafted them. In contrast, the legislature could not be aware of the particular facts of any one case.

murder, it must be shown that a human being was killed. No killing is necessary to prove aggravated robbery. To prove aggravated robbery, it must be shown either that the defendant intentionally inflicted or attempted to inflict serious bodily injury or that the defendant used or exhibited a deadly weapon. Proof of these facts is not necessary to prove felony murder. As to the particular facts of this case, the trial court found that the Bernards were killed and that appellant supplied deadly weapons in the form of .357 magnum pistols. That the Bernards were killed was unnecessary to prove aggravated robbery but was necessary to prove felony murder. The pistols were unnecessary to prove felony murder but were necessary to prove aggravated robbery. Each fact is necessary to prove one of the offenses but is not necessary for proof of the other. Applying this reasoning, the trial court correctly determined that the offenses were not the same under *Blockburger v. United States* and that separate punishments were intended. *Albernaz v. United States*, 450 U.S. at 339, 101 S.Ct. at 1142.

Legislative intent also is determined by looking to the purpose of each statute. "Where two statutes are intended to suppress different evils, the acquittal or conviction on one will not prevent prosecution of the other." *Goodman v. State*, Wyo., 601 P.2d 178, 185 (1979). If independent, but overlapping, statutes are "directed to separate evils," then cumulative punishment is intended. *Albernaz v. United States*, 450 U.S. at 343, 101 S.Ct. at 1144; *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). The felony murder statute and the underlying felony statute are intended to address separate evils. The felony murder statute is intended to provide punishment for murder; the underlying felony statute is intended to provide punishment for a variety of other evils such as sexual assault, arson, rob-

bery, burglary, escape, resisting arrest, and kidnapping. The two offenses are separate under the double jeopardy definition of "same offense," although the offenses are part of a continuous transaction.[8]

We used a similar analysis in *Tuggle v. State* where we found that the legislature obviously intended to punish separately for each individual harmed. Harm to each individual is a separate evil for which separate punishment is provided by statute. The same result is reached here. The legislature obviously intended to provide punishment for each interest harmed: the interest to property and the interest to life. Appellant was convicted of aggravated robbery for the harm he did to property and of murder for the harm he did to human life.

We previously have held that proof of one of the crimes listed in the felony murder statute is a substitute for proof of premeditated malice. *Osborn v. State*, Wyo., 672 P.2d 777 (1983), cert. denied 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984); *Richmond v. State*, Wyo., 554 P.2d 1217 (1976), reh. denied 558 P.2d 509 (1977), and cases cited therein. Proving one of the listed felonies is a substitute for proving premeditated malice in the same way that administering poison is. The legislature did not intend for the underlying felony to go unredressed once someone is killed. Rather, the legislature merely intended to make unnecessary proof of intent to kill. In *Richmond v. State*, we quoted with approval the following language from "The Diminished Capacity Defense to Felony–Murder," 23 Stan.L.Rev. 799: " 'The purpose of the felony-murder rule * * * is "to deter felons from killing negligently or accidentally by holding them *strictly responsible* for killings they commit." ' " Id. at 1232 (emphasis added).

We also note that felony murder and aggravated robbery are contained in two

---

**8.** The felony murder statute requires that the killing occur in a continuous transaction with the underlying felony. *Cloman v. State*, Wyo., 574 P.2d 410 (1978). Further, for aggravated robbery, the use of a deadly weapon must be "in the course of committing the crime of robbery." Section 6–2–401(c). However, whether the of-

fense is a single transaction is not the test. The United States Supreme Court has "steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause." *Garrett v. United States*, 471 U.S. at 790, 105 S.Ct. at 2418. See also *State v. Carter*, Wyo., 714 P.2d 1217 (1986).

separate statutes, each with its own punishment provision.

"The presumption when [the legislature] creates two distinct offenses is that it intends to permit cumulative sentences, and legislative silence on this specific issue does not establish an ambiguity or rebut this presumption[.]" *Garrett v. United States*, 471 U.S. at 793, 105 S.Ct. at 2419.

We hold that aggravated robbery and felony murder are two distinct statutory offenses and that the imposition of consecutive sentences for the violation of these statutes, whether as a principal or as an accessory, does not violate the double jeopardy provisions of either the constitution of the State of Wyoming or the constitution of the United States.

Affirmed.

URBIGKIT, Justice, dissenting, with whom CARDINE, Justice, joins.

Cause to wonder exists about the real advocacy in this appeal, since appellant, under present law, will spend the rest of his life in prison subject only to commutation. As I contemplate the wisdom of future governors as they may observe our attention to this tail-ender robbery sentence, it likely will have no practical effect on their exercised judgment under the constitutionally provided commutation power considering this case where appellant was involved in a course of conduct resulting in two murders. The only sentence not subject to commutation is the executed death penalty.

Next, inquiry is generated why the prosecutor in plea bargain did not directly avoid the Tobin–Carter–Wyoming Constitution, Art. 1, § 11 issue per *Blockburger, Whalen, Brown, Harris* and *Garrett* (*State v. Tobin*, 31 Wyo. 355, 226 P. 681 (1924); *State v. Carter*, Wyo., 714 P.2d 1217 (1986); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054

(1977); *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764, reh. denied 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985)), and consequently negotiate pleas on two clearly differentiated crimes like two murders or at least murder of one and conspiracy to rob another. Perhaps the answer as suggested in the record is who got out-negotiated for at least the gamble of the chance by the after-plea invocation of double jeopardy, to attack the life sentence augmenting penalty of separate time for robbery.

All of this aside, and with conviction that what is done on this appeal matters hardly at all to Charles Edward Birr, I dissent because the precedent established will be singularly unfortunate as to both future cases that may involve felony murder and other cases coming within the duplicity, multiplicity, or double-jeopardy inquiry of the Wyoming Constitution.

Technically this appeal involves accessory felony murder with the constituent felony as an intrinsic ingredient for the homicide offense to be first-degree murder, and with a separate sentence then given for that one constituent of the senior offense. Consequently, appellant was sentenced twice for the same murder, not unlike the result in *Whalen v. United States*, supra.

The amended information, upon which the guilty plea was taken, stated:

" * * * that CHARLES EDWARD BIRR * * *, on or about the 1st day of March, A.D. 1985 * * *, did unlawfully and knowingly encourage, command or procure an aggravated robbery to be committed and during the commission of the aggravated robbery human beings, to wit: Robert Louis Bernard and Kathleen Ann Bernard were killed, in violation of Section 6–1–201 and 6–2–101, Wyoming Statutes.

"COUNT II

"That on or about the 1st day of March, 1985, * * * the above named defendant did unlawfully and knowingly encourage, command or procure an aggravated robbery and that Charles Edward Birr furnished deadly weapons, materials and

transportation to the residence of Robert Louis and Kathleen Ann Bernard where the aggravated robbery took place, in violation of Section 6–1–201 and 6–2–401(c)(ii), Wyoming Statutes."

The issue is whether the constituent lesser-included robbery which creates the felony factor for felony murder coalesces in the resulting major offense for constitutional double-jeopardy purposes. Although not otherwise agreeing with the dissent, I would concur with the explanation in analysis of *Blockburger* by Justice Rehnquist in dissent in *Whalen v. United States*, supra, 445 U.S. at 712, 100 S.Ct. at 1448:

> " * * * [W]hen applied to compound and predicate offenses, the Blockburger test has nothing whatsoever to do with legislative intent, turning instead on arbitrary assumptions and syntactical subtleties. * * * If the polestar in this case is to be legislative intent, I see no reason to apply *Blockburger* unless it advances that inquiry."

More directly relevant to this case is the majority in Whalen, which I would find to be applicable here:

> " * * * [R]esort to the *Blockburger* rule leads to the conclusion that Congress did not authorize consecutive sentences for rape and for a killing committed in the

course of the rape, since it is plainly not the case that 'each provision requires proof of a fact which the other does not.' A conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape." 445 U.S. at 693–694, 100 S.Ct. at 1438–1439.[1]

In result, as far as the individual is concerned, I do not find consecutive trials to be necessarily different from consecutive sentences under the same trial, when the decision will be made under the purview of the Wyoming Constitution which is the basis upon which my present dissent is premised. Cf. *Harris v. Oklahoma*, supra.

More wise than many if not most of those writing within the United States Supreme Court confines, Justice Blume for the Wyoming Supreme Court clearly and suitably addressed the proper rule in *State v. Tobin*, supra, 226 P. 681, which rule was consistently followed for the next 62 years, until almost casually rejected in *State v. Carter*, supra, 714 P.2d 1217. In abandoning our tradition and precedent of the same-transaction rule to adopt what has been a wholly unsettling rule in the federal court as a result of *Blockburger*, generally called the different-evidence rule, we invoke confusion for a standard of rationali-

---

1. Not exhaustive in even reasonably current decision, cases which reject consecutive sentences for the underlying felony in felony-murder or double-jeopardy prescription include: *United States v. Chalan*, 812 F.2d 1302 (10th Cir.1987); *Pryor v. Rose*, 724 F.2d 525 (6th Cir.1984); *Colle v. Henderson*, 350 F.Supp. 1010 (W.D.La.1972); *McCracken v. State*, Alaska, 521 P.2d 499 (1974); *Swaite v. State*, 272 Ark. 128, 612 S.W.2d 307 (1981); *Callis v. People*, Colo., 692 P.2d 1045 (1984); *Hunter v. State*, 249 Ga. 114, 288 S.E.2d 214 (1982); *Sivak v. State*, 112 Idaho 197, 731 P.2d 192 (1986); *Mitchell v. State*, 270 Ind. 4, 382 N.E.2d 932 (1978); *State v. Stewart*, La., 400 So.2d 633 (1981); *Shabazz v. Commonwealth*, 387 Mass. 291, 439 N.E.2d 760 (1982); *People v. Wilder*, 411 Mich. 328, 308 N.W.2d 112 (1981); *State v. Quesinberry*, 319 N.C. 228, 354 S.E.2d 446 (1987); *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981); *State v. Villani*, R.I., 491 A.2d 976 (1985); *State v. Strouth*, Tenn., 620 S.W.2d 467 (1981), cert. denied 455 U.S. 983, 102 S.Ct. 1491, 71 L.Ed.2d 692 (1982); *State v. Vandiver*, Mo., 613 S.W.2d 637 (1981); *State v. Morgan*, Mo., 612 S.W.2d 1 (1981); *Ex Parte Drewery*, Tex.App., 710 S.W.2d 148 (1986); *State v. Shaffer*, Utah, 725 P.2d 1301 (1986).

On the associated subject of double jeopardy in dual conviction as including the lesser-included offense, see *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *United States v. Gibson*, 820 F.2d 692 (5th Cir.1987); *Hamilton v. Commonwealth*, Ky., 659 S.W.2d 201 (1983), cert. denied 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984); *Heald v. Perrin*, 123 N.H. 468, 464 A.2d 275 (1983); *Jones v. Commonwealth*, 218 Va. 757, 240 S.E.2d 658, cert. denied 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 238 (1978).

Cases contra on the double-jeopardy, felony-murder sentence based upon interpretation of legislative intent or specified state statutes are a distinct minority in number (from, for example, Arizona, Florida, Nevada, and New Mexico), as the subject is reflected by *Brimmage v. Sumner*, 793 F.2d 1014 (9th Cir.1986); and *Brimmage v. State*, 93 Nev. 434, 567 P.2d 54 (1977). See also *Fallada v. Dugger*, 819 F.2d 1564 (11th Cir.1987), and cf. *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) (vehicular homicide versus failure to reduce speed).

ty, as enunciated in Tobin and then continuously followed until current date.

Additionally, it would appear that this court improperly applies the Blockburger rule by reconstruction from "each provision requires proof of a fact which the other does not," to adopt a rule that would provide "if either invokes proof of a new fact." Under this reconstruction of *Blockburger* any lesser-included offense would always be definable as a different offense for consecutive-sentence imposition, even under the purview of the changeability of the United States Supreme Court. This posture would not now be acceptable in application of *Brown v. Ohio,* supra.

> " * * * The double jeopardy clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." 432 U.S. at 169, 97 S.Ct. at 2227.

If we were to follow completely this conception as now advanced in the majority opinion, we could have a conviction of manslaughter, second-degree murder, murder, and felony murder, with consecutive sentences where the offense involved a single death. It may seem hardly to matter, since normally one person in presently known circumstances has only one life to live.

A different-evidence test involves that different evidence will be used in each conviction not required in the other, not that the augmented offense involves further misconduct which was part of the composite transaction.

> " ' * * * [T]he test to be applied to determine whether there are two offenses or only one, is whether *each* provision requires proof of a fact that the other does not.' " (Emphasis added.) *Whalen v. United States,* supra, 445 U.S. at 692, 100 S.Ct. at 1438, quoting from *Blockburger v. United States,* supra, 284 U.S. at 304, 52 S.Ct. at 182.

In the lesser-included support felony which is the premise for felony murder, no separate fact is required to prove the one since its proof is inclusive in the proof of the second which only is the additional proof invoked. I do not perceive that the

underlying offense goes unpunished since it is composite and participative in the final sentence on the resulting more severe offense.

In *Brown v. Ohio,* supra, 432 U.S. at 169, 97 S.Ct. at 2227, it is established under the double-jeopardy prohibition of the United States Constitution, as then to be applied to the states by the Fourteenth Amendment:

> " * * * Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense."

Certainly neither *Whalen* nor *Brown,* nor any of the other cited United States Supreme Court decisions have held to the contrary, that a lesser-included offense which is intrinsic in the major offense can be the vehicle for a second and consecutive sentence to supplement the punishment afforded on the major conviction.

More particularly of concern than what I perceive as an apparent misapplication of the law within the purview of the United States Constitution, is the almost cursory disregard of the Wyoming Constitution, Art. 1, § 11, "nor shall any person be twice put in jeopardy for the same offense," and the disregard of the long-standing precedent of this state. As politics and political appointees are engrafted into the United States Supreme Court, as currently witnessed to a stark degree, the case law resulting will waiver and wane, and we of the state judiciary should establish a consistency and reliability in maintenance of a standard premised upon our state Constitution, only then to be interpreted in a fashion not to conflict with the temporal criteria manifested by current United States Supreme Court decision. See the conclusion in Comment, *Federalism, Uniformity, and the State Constitution—State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986),* 62 Wash.L.Rev. 569 (1987).

I dissent, in the almost academic question of the extended confinement obligation beyond a one-lifetime sentence by application of the constituent felony as a separate offense for punishment when the principal offense, felony murder, was pleaded out as

a life sentence. I agree with the current decision of *Garrett v. United States*, supra, where again Justice Rehnquist said:

"* * * * We have recently indicated that the Blockburger rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history." 471 U.S. at 779, 105 S.Ct. at 2412.

I would only add that the Blockburger rule should not obviate the state principles long established by Justice Blume as our standard. See *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); and most currently, *United States v. Gibson*, 820 F.2d 692 (5th Cir.1987); and *Barnard v. State*, Tex.Crim.App., 730 S.W.2d 703 (1987), where the prohibited bootstrapping did not occur in the capital-murder case where the separate felony charge involved a second person.

I would deny validity of the augmenting term as to extend sentence beyond the life confinement provided by the murder offense plea.