751 P.2d 367 (1988)
Fred SCHULTZ, Appellant (Defendant),
v.
The STATE of Wyoming, Appellee (Plaintiff).
No. 87-113.
Supreme Court of Wyoming.
March 4, 1988.
*368 H. Steven Brown of Brown, Raymond & Rissler, P.C., Casper; and Martin J. McClain, Public Defender Program, Cheyenne, for appellant (defendant).
Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Michele J. Neves, Student Intern, Cheyenne, for appellee (plaintiff).
Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.
BROWN, Chief Justice.
This appeal is a double-jeopardy challenge to a dual conviction of felony murder and conspiracy to commit aggravated robbery. Appellant Fred Schultz received consecutive sentences of life in prison and twenty to twenty-five years respectively. Appellant's sole issue on appeal is:
"Whether the Judge's decision to sentence Appellant to consecutive sentences for felony murder and the underlying felony violated the double jeopardy clauses of the United States and Wyoming Constitutions."
We affirm.
An amended information filed in Campbell County District Court on September 22, 1986, charged appellant with three felonies. He allegedly committed felony murder in violation of § 6-2-101, W.S. 1977 (June 1983 Replacement);[1] to have been an accessory to a different felony murder in violation of § 6-2-101 and 102, W.S. 1977 (June 1983 Replacement); and, to have conspired to commit aggravated robbery in violation of §§ 6-1-303 and 6-2-401(c)(ii), W.S. 1977 (June 1983 Replacement).[2] A plea bargain was arranged in which appellant agreed to plead guilty to one count of felony murder and one count of conspiracy to commit aggravated robbery. The aggravated robbery was the underlying felony for the felony murder. In return, the state agreed not to seek the death penalty on the felony murder charge, and to drop the accessory to felony murder charge. After the guilty pleas and convictions, a sentencing hearing took place on March 9, 1987. Counsel presented oral argument and the trial court sentenced appellant as described above.
Under the Fifth Amendment to the United States Constitution, a person shall not *369 "* * * be subject for the same offense to be twice put in jeopardy of life or limb. * * *" The double-jeopardy clause of the Fifth Amendment to the United States Constitution applies to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969). Art. 1, § 11 of the Constitution of the State of Wyoming also proscribes double jeopardy when it provides, "* * * nor shall any person be twice put to jeopardy for the same offense. * * *" These provisions have long been held to protect an accused against: a second prosecution for the same offense after having been acquitted on that offense; a second prosecution for the same offense after a conviction on that offense; and relevant to the issue in this case, multiple punishments for the same offense in a single trial. Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977); and Birr v. State, Wyo., 744 P.2d 1117, 1119 (1987).
Appellant argues that consecutive punishments for a conviction of conspiracy to commit a felony and a conviction of felony murder must merge when the target felony in the conspiracy is the underlying felony in the felony murder. This conclusion is urged under either of two analyses: (1) the "different evidence test" where merger occurs if the same evidence is used to prove different crimes; and (2) the "transaction rule" where merger occurs if separately charged crimes arise out of the same transaction. Both of these approaches are derivations of the language in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932);[3] see State v. Carter, Wyo., 714 P.2d 1217, 1222 (1986).
Applying these analyses to the facts in this case places the cart squarely in front of the horse because it advocates resorting to Blockburger analysis in the first instance when legislative intent is examined. This is not the proper application of Blockburger. Blockburger is only a tool for determining legislative intent from the face of two or more statutes or provisions, and it should only be used in certain limited circumstances. The threshold determinations that must be made before resorting to Blockburger are critical, and we will use this case to explain them.
The starting point, when analyzing a multiple punishment challenge, lies in recognizing that we defer to a clear expression of legislative intent to impose multiple penalties for criminal conduct when the penalties are imposed in a single trial. Missouri v. Hunter, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 543-544 (1983). In other words, double-jeopardy prohibitions are only offended when a single trial results in one defendant receiving multiple penalties not authorized by the legislature. See Thomas, A Unified Theory of Multiple Punishment, 47 Univ.Pitt. L.Rev. 1, 55 (1985).
Our task in these cases then is to determine two aspects of legislative intent: First, we determine the offense which the legislature proscribes in each relevant statute or provision. Second, we determine what punishment(s) the legislature metes out for the offense each statute or provision proscribes.[4]
*370 Our well-established rules of statutory interpretation apply in this context. We begin by looking to the plain language of the statute giving the words their plain and ordinary meaning. Hurst v. State, Wyo., 698 P.2d 1130, 1132-1133 (1985). We view a statute in terms of its object and purpose. Albernaz v. United States, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275, 284 (1981); Birr v. State, supra at 1121; Hurst v. State, supra at 1132. This examination must take place before we even consider resorting to Blockburger.
"* * * We have recently indicated that the Blockburger rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history. Missouri v. Hunter, 459 U.S. 359, 368, 74 L.Ed.2d 535, 103 S.Ct. 673 [679] (1983); Albernaz v. United States, 450 U.S. 333, 340, 67 L.Ed.2d 275, 101 S.Ct. 1137 [1143] (1981); Whalen v. United States, 445 U.S. 684, 691-692, 63 L.Ed.2d 715, 100 S.Ct. 1432 [1437-38] (1980). * * *" (Emphasis added.) Garrett v. United States, 471 U.S. 773, 779, 105 S.Ct. 2407, 2412, 85 L.Ed.2d 764, 771-772 (1985).
See also Iannelli v. United States, 420 U.S. 770, 785-786, 95 S.Ct. 1284, 1293-1294, 43 L.Ed.2d 616, 627-628 (1975). Cf. Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).
The plain language of § 6-1-303,[5] and its obvious object and purpose, settle the multiple punishment challenge in this case. The offense proscribed by § 6-1-303 is the inchoate act of agreeing with one or more persons to commit a crime. The punishment for committing this offense is the same as the penalty for the most serious crime that is an object of the conspiracy, in this case an aggravated robbery. § 6-1-304, W.S. 1977 (June 1983 Replacement); and § 6-2-401(c). The illegal agreement and the stated punishment constitute one conviction for conspiracy that does not merge with other substantive offenses.
This conclusion is also adhered to in a long line of federal cases interpreting a very similar general conspiracy statute.[6] In Iannelli v. United States, supra, 420 U.S. at 791, 95 S.Ct. at 1296, 43 L.Ed.2d at 630, the United States Supreme Court held that the crime of general conspiracy under 18 U.S.C. § 371 (1982), could be punished independently from a violation of another federal criminal statute, making it illegal for five or more persons to participate in a gambling business. Other cases interpreting 18 U.S.C. § 371 in a similar fashion include: United States v. Feola, 420 U.S. 671, 687, 693, 95 S.Ct. 1255, 1268, 43 L.Ed.2d 541, 554 (1975); Pinkerton v. United States, 328 U.S. 640, 643-648, 66 S.Ct. 1180, 1181-1184, 90 L.Ed. 1489, 1494-1497 (1946); Braverman v. United States, 317 U.S. 49, 53-55, 63 S.Ct. 99, 101-102, 87 L.Ed. 23, 28-29 (1942), and cases cited therein.
Based on the plain meaning of the language in § 6-1-303, taken in light of its object and purpose, we hold that a general conspiracy conviction will support independent punishment. In this case specifically, this holding means that a conviction for conspiracy to commit an aggravated robbery and a conviction for felony murder resulting from that aggravated robbery do not violate the prohibition against double-jeopardy. See State v. Carey, 285 N.C. 509, 206 S.E.2d 222 (1974), later app. 288 N.C. 254, 218 S.E.2d 387, vacated in part on other grounds 428 U.S. 904, 96 S.Ct. 3209, 49 L.Ed.2d 1209 (1975).
*371 Further, the fact that § 6-1-303, like 18 U.S.C. § 371, requires the prosecution to show some overt act by one of the conspirators to make out a prima facie case of conspiracy does not mandate a merger. As we stated above, the offense proscribed by § 6-1-303 is criminal agreement. The overt act requirement serves the distinct function of proving that the criminal agreement was in some way acted upon. Any overt act, whether criminal in itself or not, fulfills that aspect of a prima facie case of conspiracy:
"* * * It is not necessary that an overt act be the substantive crime charged in the indictment as the object of the conspiracy. Pierce v. United States, 252 U.S. 239, 244, 40 S.Ct. 205 [207], 64 L.Ed.2d 542, 546 [1920]; United States v. Robinowich, 238 U.S. 78, 86, 35 S.Ct. 682 [684], 59 L.Ed.2d 1211 [1915]. Nor, indeed, need such an act, taken by itself, even be criminal in character. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed.2d 23. The function of the overt act in a conspiracy prosecution is simply to manifest `that the conspiracy is at work,' Carlson v. United States, 10 Cir., 187 F.2d 366, 370 [1951], and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence. The substantive offense here charged as the object of the conspiracy is speech rather than the specific action that typically constitutes the gravamen of the substantive criminal offense. * * *" (Emphasis added.) Yates v. United States, 354 U.S. 298, 334, 77 S.Ct. 1064, 1084-1085, 1 L.Ed.2d 1356, 1384 (1957).
It is also well settled that the overt act of any one of the conspirators can fulfill the requirement for the others. § 6-1-303(a); and Pinkerton v. United States, supra, 328 U.S. at 647, 66 S.Ct. at 1184, 90 L.Ed. at 1496-1497.
The record in this case leaves no doubt that the overt act requirement was fulfilled. Appellant's own testimony at his change of plea hearing was that co-conspirator Birr furnished co-conspirator Garcia with a knife, a gun, gloves, rope and duct tape for the robbery, and that all of the men drove to the scene of the crime together. These actions were more than enough to fulfill the overt act requirement for a prima facie case of conspiracy against appellant.
This case does not present a violation of appellant's constitutional protections against multiple punishment.
Affirmed.
URBIGKIT, J., filed a special concurring, in which CARDINE, J., joined.
URBIGKIT, Justice, specially concurring, with whom CARDINE, Justice, joins.
I specially concur only to observe that this appeal does not suffer from the same infirmity which required my dissent in Birr v. State, Wyo., 744 P.2d 1117 (1987).
In Birr, the constituent felony offense for the felony murder was aggravated robbery as the essential element of the offense and then separately extrapolated to create another chargeable offense for which a separate sentence was given. As contended in the dissent, a double-jeopardy violation consequently resulted.
Obviously, the prosecutors have learned the appropriate lesson in Campbell County since that plea bargain, and have here obtained a separate conspiracy guilty plea as different from the aggravated robbery used to aggregate the homicide to felony murder. Consequently, I concur with the logic and conclusion of this court in finding in conspiracy a separately chargeable offense from the aggravated-robbery constituent of felony murder, for which a second sentence can constitutionally be invoked. Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764, reh. denied 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985); Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); United States v. Muhammad, 824 F.2d 214 (2d Cir.1987), cert. denied ___ U.S. ___, 108 S.Ct. 716, 98 L.Ed.2d 666 (1988); Weatherly v. State, Okla. Crim. App., 733 *372 P.2d 1331 (1987). Cf. People v. Williams, 240 Cal. Rptr. 717, 195 Cal. App.3d 398 (1987); People v. Tippett, Colo., 733 P.2d 1183 (1987); Zackery v. State, 257 Ga. 442, 360 S.E.2d 269 (1987); Hendrick v. State, 257 Ga. 514, 361 S.E.2d 169 (1987); Boze v. State, Ind., 514 N.E.2d 275 (1987); State v. Cathey, 241 Kan. 715, 741 P.2d 738 (1987).
A thoughtful and challenging analysis of the dual-offenses, double-jeopardy inquiry, particularly directed to case law in North Carolina, is found in Herstein, State v. Gardner: North Carolina Sails Into the Sargasso Sea, 65 N.C.L. Rev. 1267 (1987). See also, State v. Gardner, 315 N.C. 444, 340 S.E.2d 701 (1986); and Thomas, Multiple Punishments for the Same Offense: The Analysis after Missouri v. Hunter, Or Don Quixote, The Sargasso Sea and the Gordian Knot, 62 Wash.U.L.Q. 79 (1984).
NOTES
[1] The statute provides:

"§ 6-2-101. Murder in the first degree; penalty.
"(a) Whoever purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, any sexual assault, arson, robbery, burglary, escape, resisting arrest or kidnapping, or by administering poison or causing the same to be done, kills any human being is guilty of murder in the first degree. "(b) A person convicted of murder in the first degree shall be punished by death or life imprisonment according to law."
[2] These statutes provide:

"§ 6-1-303. Conspiracy; renunciation of criminal intention; venue.
"(a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.
"(b) A person is not liable under this section if after conspiring he withdraws from the conspiracy and thwarts its success under circumstances manifesting voluntary and complete renunciation of his criminal intention.
"(c) A conspiracy may be prosecuted in the county where the agreement was entered into, or in any county where any act evidencing the conspiracy or furthering the purpose took place."
"§ 6-2-401. Robbery; aggravated robbery; penalties.
"(a) A person is guilty of robbery if in the course of committing a crime defined by W.S. 6-3-402 he:
"(i) Inflicts bodily injury upon another; or
"(ii) Threatens another with or intentionally puts him in fear of immediate bodily injury.
"(b) Except as provided in subsection (c) of this section, robbery is a felony punishable by imprisonment for not more than ten (10) years.
"(c) Aggravated robbery is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years if in the course of committing the crime of robbery the person:
"(i) Intentionally inflicts or attempts to inflict serious bodily injury; or
"(ii) Uses or exhibits a deadly weapon or a simulated deadly weapon.
"(d) As used in this section `in the course of committing the crime' includes the time during which an attempt to commit the crime or in which flight after the attempt or commission occurred."
[3] "* * * [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).
[4] Our recent double-jeopardy case explained this approach more cursorily by stating that Blockburger may only be used when

"* * * a defendant commits one act which violates two different and separate statutes or provisions. * * *" Birr v. State, Wyo., 744 P.2d 1117, 1120 (1987).
See supra note 3; and Tuggle v. State, Wyo., 733 P.2d 610, 611 (1987). We will refer to "one act" in this context more precisely as one offense since the legislature can proscribe any combination of distinct physical or inchoate actions as a single offense. See Brown v. Ohio, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187, 195-196 (1977); Vigil v. State, Wyo., 563 P.2d 1344, 1351 (1977); Thomas, A Unified Theory of Multiple Punishment, 47 Univ.Pitt.L.Rev. 1, at 12-25 (1985). A single conviction then involves matching the proscribed offense with the punishment(s) authorized for it by the legislature in a statute or provision.
[5] See supra note 2 at § 6-1-303(a).
[6] The federal general conspiracy statute is codified at 18 U.S.C. § 371 (1982), and provides:

"§ 371. Conspiracy to commit offense or to defraud United States
"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
"If however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." (Emphasis added.)